Case 3:12-cv-08216-FJM   Document 19   Filed 09/13/13   Page 1 of 7

**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jody L Barker,<br><br>    Plaintiff,<br><br>vs.<br><br>Carolyn Colvin, Commissioner of Social Security,<br><br>    Defendant. | No. CV-12-08216-PCT-FJM<br><br>**ORDER** |

Plaintiff filed an application for disability insurance benefits on January 12, 2009. Plaintiff also filed an application for supplemental security income on January 13, 2009. The claims were denied initially and upon reconsideration. Following a hearing held on March 17, 2011, the administrative law judge ("ALJ") issued a decision finding that plaintiff was not disabled within the meaning of the Social Security Act, and denying benefits. The Appeals Council denied plaintiff's request for review on August 29, 2012, rendering the ALJ's decision final. Thereafter, plaintiff filed this action seeking judicial review pursuant to 42 U.S.C. § 405(g). We have before us plaintiff's opening brief (doc. 16), defendant's answering brief (doc. 17), and the administrative record (doc. 15). Plaintiff did not file a reply, and the time for doing so has expired.

**I**

A district court may set aside a denial of benefits "only if it is not supported by

1  substantial evidence or if it is based on legal error." Thomas v. Barnhart, 278 F.3d 947, 954
2  (9th Cir. 2002). Substantial evidence is "relevant evidence which, considering the record as
3  a whole, a reasonable person might accept as adequate to support a conclusion. Where the
4  evidence is susceptible to more than one rational interpretation, one of which supports the
5  ALJ's decision, the ALJ's conclusion must be upheld." Id. (citation omitted).

6  The ALJ followed the Social Security Act's five-step procedure to determine whether
7  plaintiff is disabled. See 20 C.F.R. § 416.920(a)(4). First, the ALJ determined that plaintiff
8  meets the status requirements of the Social Security Act and has not engaged in substantial
9  gainful activity since the date of alleged onset. Tr. 19. At step two, the ALJ found that
10 plaintiff suffered "severe" impairments including osteoarthritis of hip joints and obesity. Id.
11 At step three, the ALJ found plaintiff's impairments do not meet the criteria listed in the
12 regulations. Tr. 21. Next, the ALJ determined that plaintiff has the residual functional
13 capacity ("RFC") to perform the full range of sedentary work as defined in 20 C.F.R. §
14 404.1567(a) and 416.967(a). Tr. 22. At the hearing, a vocational expert ("VE") testified that
15 a person limited to plaintiff's RFC could not perform plaintiff's past relevant work. Tr. 87.
16 At step four, the ALJ concluded that plaintiff's RFC prevents him from performing his past
17 relevant work. Tr. 26. The ALJ made alternative findings under step five of the sequential
18 evaluation procedure based on the Medical-Vocational Guidelines in 20 C.F.R. § 404. The
19 ALJ concluded that considering plaintiff's age, education, work experience and RFC,
20 Medical-Vocational Rule 201.28 directs a finding that plaintiff is not disabled. Tr. 27.

21 Plaintiff suggests that the ALJ erred in determining that plaintiff's bilateral hip
22 condition did not meet or equal one of the impairments listed in 20 C.F.R. § 404. Plaintiff
23 also argues that the ALJ erred by formulating a defective RFC, rejecting his symptom
24 testimony and relying on the Medical-Vocational Guidelines in step five of the analysis.
25 Plaintiff urges that we reverse the ALJ's decision and remand for administrative proceedings.

26 **II**

27 Plaintiff suggests that the ALJ erred in finding that his bilateral hip condition did not
28 meet the standard in Section 1.02(A) of the listing of impairments in the regulations. For a

1    claimant to qualify for benefits by showing that his impairment is "equivalent" to one of the

2    impairments listed in the regulations, "he must present medical findings equal in severity to

3    *all* the criteria for the one most similar listed impairment." Sullivan v. Zebley, 493 U.S. 521,

4    531, 110 S. Ct. 885, 891 (1990) (emphasis in original). In order to meet listing 1.02, a

5    claimant must show:

> Major dysfunction of a joint . . . characterized by gross anatomical deformity [. . .] and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or anykylosis of the affected joint(s). With [i]nvolvement of a weight bearing joint (i.e. hip, knee, or ankle) resulting in an inability to ambulate effectively.
> 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.02(A).

10   Here, substantial evidence supports the ALJ's finding that plaintiff's hip arthritis did not

11   meet or medically equal listing 1.02(A). Tr. 21. X-rays showed bilateral degenerative

12   changes of the hips and the possibility of bilateral femoral acetabular impingement. Id.

13   However, as the ALJ noted, the record did not demonstrate that plaintiff had chronic joint

14   pain and stiffness with limitation or motion or other abnormal motion. Id. Dr. Barker stated

15   that plaintiff had full range of motion in his hips and other joints. Tr. 325-29. The record

16   does not reflect plaintiff's inability to ambulate or an extreme limitation in his ability to walk,

17   as required for listing 1.02(A). In fact, plaintiff testified that he drives, shops and performs

18   other daily activities without the use of hand-held or motorized devices. Tr. 21, 243, 315-

19   316, 325. Accordingly, the ALJ did not err in finding that plaintiff's hip impairment did not

20   meet or equal listing 1.02(A).

**III**

22   Next, plaintiff argues that the ALJ's finding that he has the RFC to perform sedentary

23   work is based on material errors of law and not supported by substantial evidence. It is the

24   ALJ's responsibility to assess a claimant's RFC based on all relevant medical evidence in the

25   record. See 20 C.F.R. § 404.1546; SSR 96–5p. We will affirm an ALJ's RFC determination

26   if the proper legal standard is applied and if the decision is supported by substantial evidence

27   in the record. Bayliss v. Barnhard, 427 F.3d 1211, 1217 (9th Cir. 2005).

28   Here, the ALJ determined plaintiff's RFC based on all relevant medical evidence in

1 the record. First, the ALJ explained that he gave the most weight to the opinions of the state
2 agency medical consultants who opined that plaintiff could perform a range of light work.
3 Tr. 25. Because the ALJ also considered plaintiff's obesity and potential aggravating factors
4 from the hip pain, she reduced the RFC to the sedentary level. Id. Next, the ALJ explained
5 that she gave less weight to the opinions of Dr. Barker and Dr. Jaume because those opinions
6 were inconsistent with the record as a whole. As noted by the ALJ, Dr. Barker's opinion that
7 plaintiff had no work-related limitations is inconsistent with the state doctors' opinions. Tr.
8 26. Dr. Jaume's opinion is also inconsistent with the record because he refers to x-rays in
9 his notes, but there are no x-rays attached to his opinion, and he states that no x-rays were
10 taken at the time of examination. See Tr. 405.

11 Contrary to plaintiff's allegations, the ALJ did not "wholly exclude evidence about
12 his borderline intellectual functioning and learning disorder." Doc. 16 at 14. The ALJ
13 explicitly stated that he considered Dr. Gill and the state agency psychologists' assessments
14 regarding plaintiff's mental impairments. Tr. 20, 26. Dr. Gill and the state agency
15 psychologists opined that claimant had some learning and concentration problems, but that
16 those impairments would not prevent basic work activities at the unskilled level. Tr. 319,
17 332-348. The ALJ stated that she gave some weight to those opinions to the extent that they
18 were consistent with the record as a whole, including plaintiff's testimony and reported daily
19 activities. Tr. 26. Because the ALJ assessed the medical evidence in the record regarding
20 both physical and mental impairments, and supported her findings with substantial evidence
21 in the record, we affirm her RFC determination.

## IV

23 Plaintiff also argues that the ALJ failed to properly evaluate the credibility of his
24 symptom testimony. Absent affirmative evidence of malingering, an ALJ must give clear
25 and convincing reasons in order to reject the plaintiff's symptom testimony. Molina v.
26 Astrue, 674 F.3d 1104, 1112-1113 (9th Cir. 2012) (citations omitted). However, the ALJ
27 is not "required to believe every allegation of disabling pain." Id. When weighing a
28 plaintiff's credibility, "the ALJ may consider his reputation for truthfulness, inconsistencies

1 either in his testimony or between his testimony and his conduct, his daily activities, his work
2 record, and testimony from physicians and third parties concerning the nature, severity, and
3 effect of the symptoms of which he complains." Light v. Social Sec. Admin., 119 F.3d 789,
4 792 (9th Cir. 1997) (citations omitted). The ALJ may also consider the dosage and
5 effectiveness of any treatment or pain medication for relief of pain. Bunnell v. Sullivan, 947
6 F.2d 341, 346 (9th Cir. 1991). "If the ALJ's credibility finding is supported by substantial
7 evidence in the record, we may not engage in second-guessing." Thomas, 278 F.3d at 959.

8 Here, the ALJ gave clear and convincing reasons to reject the plaintiff's symptom testimony. First, the ALJ discussed inconsistencies regarding plaintiff's alleged onset date of February 2, 2007. Tr. 23. As noted by the ALJ, the record reflects that plaintiff alleged in his initial benefits application that his hip injuries first interfered with his ability to work in 1990, yet he did not stop working until February 2007. Tr. 22, 217. The ALJ also noted that there were no treatment records showing that plaintiff sought treatment for his hip pain in the years leading up to, or for 18 months after his February 2007 alleged onset date. Id. Second, the ALJ noted that plaintiff's reported daily activities were inconsistent with his claimed limitations. Id. During the hearing, plaintiff stated that "it just kills me to do anything hardly anymore because of the arthritis in my hips." Tr. 70. Yet, he reported to various doctors that he was able to run errands, drive, water trees, clean up after the dogs, and shop. Tr. 315-316, 325. Finally, the ALJ noted that the lack of treatment plaintiff received after he saw his treating physician for his hip problems suggests that the symptoms may not have been as serious as alleged. Tr. 24-25. Dr. Jaume recommended a conservative treatment course of anti-inflammatory medications and possibly cortisone injections. Tr. 405. However, as noted by the ALJ, plaintiff refused the treatment without explanation. Tr. 388 "[U]nexplained, or inadequately explained, failure to seek treatment may be the basis for an adverse credibility finding unless one of a number of good reasons for not doing so applies." Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007) (citation and internal quotations omitted). Therefore, it was reasonable for the ALJ to conclude that the lack of treatment

inconsistent with the plaintiff's level of complaints.

The inconsistencies in the record regarding plaintiff's alleged onset date, inconsistencies between the plaintiff's testimony and his daily activities, and the lack of evidence of treatment for his hip problems together constitute clear and convincing reasons in support of the ALJ's credibility determination.

## V

Finally, plaintiff contends that the ALJ erred by relying on the Medical-Vocational Guidelines to determine that plaintiff was "not disabled." The Commissioner may show that plaintiff can perform some other work that exists in significant numbers in the national economy in two ways: "(a) by the testimony of a vocational expert, or (b) by reference to the Medical–Vocational Guidelines [GRIDS]." Lockwood v. Commissioner Social Sec. Admin., 616 F.3d 1068, 1071 (9th Cir. 2010). The GRIDS are inapplicable "when a claimant's non-exertional limitations are 'sufficiently severe' so as to significantly limit the range of work permitted by the claimant's exertional limitations." Hoopai v. Astrue, 499 F.3d 1071, 1075 (9th Cir. 2007). Plaintiff argues that the ALJ could not rely on the GRIDS because the non-exertional impairments identified by Dr. Gill and Dr. Peyrera cannot be disregarded. However, the ALJ determined that plaintiff's mental impairments are "not severe." The ALJ's finding is supported by the guidelines set out in the regulations for evaluating mental disorders and by Dr. Peyrera's opinion that the plaintiff would be capable of performing simple and repetitive tasks on a sustained basis despite his alleged mental impairments. Tr. 20-21, 348. Because the ALJ's finding that plaintiff's non-exertional impairments are "not severe" is supported by substantial evidence in the record, the reliance on GRIDS was reasonable and appropriate.

## VI

Based on the foregoing, we conclude that the ALJ's conclusion that plaintiff is not

- 6 -

disabled is supported by substantial evidence in the record. Therefore, **IT IS ORDERED AFFIRMING** the decision of the Commissioner denying disability benefits. The clerk shall enter final judgment.

DATED this 13th day of September, 2013.

*Frederick J. Martone*

Frederick J. Martone
Senior United States District Judge